UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KATHRYN ANN BALLE, | § § § § | |
| Plaintiff, | § § | |
| v. | § | CIVIL ACTION NO. H-07-cv-02692 |
| | § | |
| JO ANNE BARNHART, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | § § § § § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Before the Court are Plaintiff and Defendant's Motions for Summary Judgment (Doc. Nos. 20 and 21). For the following reasons, Defendant's Motion must be granted and Plaintiff's Motion must be denied.

### I.   BACKGROUND

This employment discrimination suit arises out of Plaintiff's termination from her position as a Service Representative ("SR") with Defendant Social Security Administration ("SSA").[1] Plaintiff is a Mexican American female who was over the age of 40 years old at the time she was employed with Defendant.

Defendant's Field Offices provide services to the public. A person can apply for a new or replacement Social Security card, apply for retirement, survivors, disability, Medicare, Medicaid, or Supplemental Security Income benefits at Defendant's Field Offices. (Phillips Aff. ¶ 2.) Plaintiff was hired as an SR in the Pasadena Field Office on August 25, 2003. From the beginning of her employ with Defendant, her supervisor was Chezwynn L. Phillips. (Phillips

---

[1] For the purpose of this Motion only, the facts are presented in the light most favorable to Plaintiff.

Aff. ¶ 4.) Phillips supervised 13 employees at any given time, including Claims Representatives ("CRs") and SRs. SRs, in general, are responsible for handling public inquires, approving requests for new or replacement Social Security cards, resolving post-adjudicative issues, e.g., benefit cessation, overpayments, earnings discrepancies, and issuing replacement benefit checks. (Phillips Aff. ¶ 3.)

The duties of the SRs include responding to inquiries from claimants and others, by telephone or written correspondence, regarding benefits programs administered by Defendant; conducting face-to-face interviews with the public; investigating case situations; and reconciling discrepancies that cause non-receipt of monthly benefits or Medicare payments. SRs explain reporting requirements to individuals receiving beneficiaries and inform them of the appropriate channels for obtaining supplemental coverage. SRs input data into Defendant's computer system to continue, reinstate, terminate, or suspend monthly benefits, and also refer individuals to various agencies and sources equipped to provide additional program assistance and services. (Phillips ¶ 4.)

Plaintiff was hired as an SR under a two-year conditional appointment as part of the Federal Career Internship Program ("FCIP"). Defendant has the option, at the end of the two-year conditional appointment, to extend an offer of permanent employment to an FCIP hire. (Phillips ¶ 4.) Plaintiff has a long history of federal employment. She worked for the Department of the Air Force at Kelly Air Force Base from 1978 through 1983, the General Services Administration in 1983, the Department of Defense from 1992 to 1993, and the United States Postal Service in 1994. (Doc. No. 21, Ex. A at 11, 35.)

At the time she began, Plaintiff was the only new SR in the Pasadena office. (Balle Dep. 36.) Plaintiff received "CORE" training from the time she began her job in August 2003 until

2

November 21, 2003. (Balle Dep. 29-30.) CORE training teaches employees skills that are relevant to all the positions in the agency. (Phillips Aff. ¶ 5.) Plaintiff achieved the passing score required at the end of her CORE training. (Woodring Dep. 35:1-6.) After she completed the CORE training, Plaintiff began training for her specific SR position at the Northwest Office, which lasted from December 2003 to March 2004. (Balle Dep. 29-30.) One of the instructors from this training informed Phillips that Plaintiff was having difficulty with simple math. (Phillips Aff. ¶ 6.)

When Plaintiff began her employment as a SR, she was assigned a mentor who did not teach her anything, and she requested a new mentor. Balle told Woodring, the Assistant Manger of the Pasadena Field Office, that she wanted a different mentor to work with her at a slower pace. (Woodring Dep. 37:13-15; 105:12-13.) Plaintiff was then assigned to Dezirae Augustus, whom Plaintiff described as "a good mentor." (Balle Dep. 23-24.) Augustus told Phillips that Plaintiff was having trouble performing the requirements of an SR. Plaintiff wanted to limit her job to performing simple inputs, like "student inputs" or "death inputs," but this would create inconsistent workloads among SRs. (Phillips Aff. ¶ 8; Augustus Aff. ¶ 5-6.) Augustus believed that Plaintiff had trouble when she was assigned to answer the general inquiry line or sit at the receptionist window. (Augustus Aff. ¶ 5.) Augustus provided Plaintiff with feedback on a weekly basis, but she believed that Plaintiff was unable to retain things she had been taught. (*Id.*) Augustus informed Phillips that Plaintiff did not understand how to be an SR. (*Id.*) As a result, Phillips never assigned Plaintiff the full workload of an SR, so that she could have room for improvement. (Augustus ¶ 5.)

Plaintiff was given a successful appraisal in July 2004, but Phillips advised her that she was having difficulty with her job performance, even with reduced job duties that included only

3

the simplest and most basic parts of the SR job. (Phillips Aff. ¶ 9.) Phillips advised Plaintiff that if the decision had to be made on that day, Phillips would not retain Plaintiff in her position based on her performance. (*Id.*) On August 22, 2004, Plaintiff was promoted. (Doc. No. 21, Ex. A at 5.)

Plaintiff testified that Phillips would ignore her or get upset if she asked questions. Phillips would lecture Plaintiff rather than counsel her and, according to Plaintiff, she would unjustly criticize Plaintiff's work. (Balle Dep. 36-37.) Plaintiff testified that Phillips did not like her, that she would snap her fingers, "stare down" Plaintiff, give her hostile looks, and ignore her. (Balle Dep. 38.) Plaintiff alleged that, at one point, Phillips called her a "dirty spic." (Balle Dep. 41-42.)[2] Plaintiff concedes, however, that she did not mention this comment in her EEOC complaint, nor did she inform Phillips' supervisor, Leonard Kanick, Woodring, or anyone else at the Pasadena Field Office, that Phillips made this statement. (Balle Dep. 44.) Plaintiff also testified that Phillips tried to get another male employee to call her a "bitch" and "the N word" so that Phillips could "get rid of him." (Balle Dep. 44-45.) Plaintiff testified however, that she only heard Phillips use a slur on one occasion, and that no one else at the Pasadena Field Office ever used slurs, except one employee who was fired for doing so. (Balle Dep. 45-46.) In general, Plaintiff felt that other employees in the Pasadena Field Office were treated more favorably than she and that she was not properly trained. (Balle Dep. 49-51.)

On September 14, 2004, Plaintiff was issued a Performance Plan ("PP") and Orientation Briefing ("OB"). (Doc. No. 21, Ex. A at 19.) Plaintiff was given a "Performance Assessment for Non-Supervisory Employees" on March 17, 2005. (*Id.*) According to Plaintiff, neither document contained any "derogatory remarks" about her work performance. (*Id.*) Plaintiff further argues that, according to the Performance Assessment, Phillips was satisfied with her

---

[2] Phillips denies ever calling Plaintiff a "spic." (Phillips Aff. ¶ 12.)

performance from August 29, 2003 to July 14, 2004. (Doc. No. 21, Ex. C.) Plaintiff argues that her Performance Assessment demonstrates that, out of the 721 files she reviewed, the examiner found that Plaintiff had committed an error in only one file. (Doc. No. 21, Ex. C.)

On December 16, 2004, Phillips advised Plaintiff that she had six months left to demonstrate that she could perform the full range of SR duties. Plaintiff was still unable to meet the critical elements of her job. (Phillips Aff. ¶ 10.) The regional office prepared a Notice of Non-extension, and Kanick decided not to extend Plaintiff's appointment. (Woodring Dep. 40:1-8.) In July 2005, Phillips informed Plaintiff that she would not continue her job under the FCIP because she could not meet the critical elements of the position, and she would not be offered permanent employment as an SR. (Phillips Aff. ¶ 11.) Plaintiff was not offered a permanent position and her appointment was not extended. (*Id.*) She was removed from her position on August 23, 2005. (Doc. No. 21, Ex. A at 17.)

In Plaintiff's Complaint, she alleges that she was discriminated against on the basis of her age, national origin, race, and gender. Further, although it is not listed as a cause of action, Plaintiff states that she suffered from a hostile work environment. This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## II. ANALYSIS

### A. Failure to Exhaust Administrative Remedies

Defendant moves to dismiss Plaintiff's race, gender, and national origin claims, arguing that Plaintiff failed to exhaust her administrative remedies as to these claims because she did not mention them in her EEOC complaint, and because she only checked the box for age discrimination on the EEOC forms. (Doc. No. 20, Ex. 1.) In Plaintiff's Response to Defendant's Motion for Summary Judgment, she effectively concedes this point, stating that "Effectively, via

5

the Defendant's admissions within its MFSJ and the Plaintiff's administrative complaint the issues before the Court are Plaintiff's allegations of age discrimination, non-sexual harassment... her termination, and disparate treatment and hostile work environment the Defendant's RMOs created against the Plaintiff before she was summarily removed from her federal civil service job as a Contact Representative (CR)." Plaintiff does not specifically discuss her race, gender, or national origin claims in either her Motion for Summary Judgment or her Response to Defendant's Motion for Summary Judgment, or her Reply to Defendant's Response. The Court will therefore consider these claims waived.[3]

## B. Summary Judgment Standard

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. FED. R. CIV. P. 56(c). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (quotations omitted). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). The Court views all evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Id.* Hearsay, conclusory

---

[3] The Court notes that, even if the claims are not waived, Plaintiff failed to exhaust her administrative remedies with respect to these claims. Not only did Plaintiff fail to check the boxes for these other forms of discrimination, but she did not make any specific allegations of discrimination based on gender, race, or national origin in either the factual statement of the charge or in the letter she wrote to the EEOC during its investigation. (Doc. No. 20, Ex. 1.) The Fifth Circuit has noted that the factual statement of the EEOC charge is the "crucial element of a charge of discrimination." *Sanchez v. Standard Brands*, 431 F.2d 455, 462 (5th Cir. 1970). Even under the broad reading that courts are required to afford a plaintiff's EEOC complaint, however, Plaintiff's complaint does not contain facts that one would reasonably expect to trigger an EEOC investigation on the basis of gender, race, or national origin. *See Pacheco v. Mineta*, 448 F.3d 783, 792 (5th Cir. 2006).

allegations, unsubstantiated assertions, and unsupported speculation are not competent summary judgment evidence. F.R.C.P. 56(e)(1); *See, e.g., Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996), *McIntosh v. Partridge*, 540 F.3d 315, 322 (5th Cir. 2008); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1975 (5th Cir. 1994) (noting that a non-movant's burden is "not satisfied with 'some metaphysical doubt as to the material facts'") (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

### C. Age Discrimination in Employment Act Claim

Under the ADEA, it is "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1); *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 141 (2000). When a plaintiff alleges disparate treatment, "liability depends on whether the protected trait (under the ADEA, age over 40 years) actually motivated the employer's decision." *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993); *Reeves*, 530 U.S. at 141. ADEA discrimination claims are subject to the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973):

> *McDonnell Douglas* instructs that the plaintiff must first establish a *prima facie* case of [age discrimination]. . . . Once the plaintiff presents a *prima facie* case, the defendant must then articulate a legitimate, nondiscriminatory reason for the questioned employment action. . . . If the defendant is able to do so, the burden shifts back to the plaintiff to produce evidence that the defendant's articulated reason is merely a pretext for discrimination.

*Bodenheimer v. PPG Industries, Inc.*, 5 F.3d 955, 957 (5th Cir. 1993); *Nichols v. Loral Vought Systems Corp.*, 81 F.3d 38, 40 (5th Cir. 1996). If the plaintiff can establish that defendant's articulated reason is pretext, and if the *prima facie* case is sufficiently strong, a trier of fact may be able to conclude that the employer unlawfully discriminated without additional evidence. *See*

*Reeves*, 530 U.S. at 148 (finding that the district court properly submitted the case to the jury). Such a showing will not always be sufficient: whether summary judgment is appropriate depends on numerous factors, including "the strength of the plaintiff's *prima facie* case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered." *Price v. Federal Exp. Corp.*, 283 F.3d 715, 720 (5th Cir. 2002) (quoting *Reeves*, 530 U.S. at 148-49).

In order to establish a prima facie case of age discrimination for wrongful termination, a plaintiff must show: (i) she belonged to the protected class (over 40 years of age); (ii) she was otherwise qualified for his position; (iii) she was discharged; (iv) her employer (a) subsequently hired people outside the protected class to fill the position, (b) replaced her with someone younger and (c) she was otherwise discharged because of her age. *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007); *Price*, 283 F.3d at 719-20; *Ross v. Univ. of Texas at San Antonio*, 139 F.3d 521, 525 (5th Cir. 1998).

Defendant argues that Plaintiff cannot show that she was qualified for the SR position, nor can she show that she was replaced by someone outside her protected class, or that others similarly situated were treated more favorably under nearly identical circumstances.[4] The Court agrees that Plaintiff has not established a prima facie case. It is true that Plaintiff was over the age of 40 at the time she was fired, and Plaintiff has highlighted certain events, specifically her promotion and positive performance reviews, that create a fact issue as to whether she was qualified for her job. Plaintiff has not alleged any facts that show, and the record does not reflect, that she was replaced by a younger employee or that she was otherwise discriminated on

---

[4] Plaintiff objects to both of the "Kathy Balle Timelines" as inadmissible. (Doc. No. 21, Ex. H.) The Court notes that it does not rely on either document in reaching its holding.

the basis of her age. Plaintiff has produced no evidence that any supervisor made ageist comments or somehow favored younger employees.

Plaintiff argues that an email between Phillips and Kaysha Lewis indicates that Plaintiff was treated differently because she rotated mentors instead of being assigned to one mentor. First, Plaintiff does not argue that the employees who were assigned permanent mentors were younger. Second, the email exchange indicates that Lewis was referring to the mentor system in the Northwest Division, where Plaintiff was being trained, while Phillips was referring to the mentor system used in the Pasadena Field Office, in which SRs are assigned a specific mentor. (Doc. No. 21, Ex. C.)

Plaintiff next argues that, under the terms of the collective bargaining agreement negotiated between Defendant and its union, she was entitled to a Performance Assistance Plan and an Opportunity to Perform Successfully Plan, as well as thirty days written advanced notice of her termination. Plaintiff bases this argument on an email in which Carolyn Jackson, a Labor and Relations Specialist in Dallas, stated that the reason Plaintiff would not receive a "Limited Opportunity to Improve Letter" was because she had prior federal service. (Doc. No. 21, Ex. F.) Woodring testified that she interpreted Jackson's email to mean that Plaintiff was not entitled to an Assistance Plan or an Opportunity to Perform Successfully Plan, and that she believed that under the FCIP, Plaintiff was not entitled to either. (Woodring Dep. 87:1-13.) Woodring also testifies that B.L. Williams and Carolyn Jackson, both employment specialists, instructed her as such. (*Id.* at 90:21.) Woodring concedes that she does not know why Plaintiff was not given 30 days to improve. (*Id.* at 113:7-9.) Even if Defendant did deviate from its own human resources policies when it terminated Plaintiff, however, she has not argued or presented facts that demonstrate that these departures were somehow motivated by her age.

9

### D. Hostile Work Environment

Defendant argues that Plaintiff has not established a prima facie case of a hostile work environment because she has not produced evidence that Phillips' conduct was based on Plaintiff's race, sex, age, or national origin. In order for evidence to ground a claim of harassment, the plaintiff must prove (i) she was a member of a protected class (ii) she was subject to unwelcome harassment (iii) the harassment was motivated by her membership in a protected class; (iv) harassment affected a term or condition of her employment; and (v) employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Harvill v. Westward Communications,* LLC, 433 F.3d 428, 434 (5th Cir. 2005) (describing elements for harassment by a coworker); *Frank v. Xerox Corp.*, 347 F.3d 130, 138 (5th Cir. 2003); *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 353 (5th Cir. 2001). The Fifth Circuit distinguishes harassment by a supervisor from that of a co-worker—the fifth element is not required to establish a prima facie case of harassment in the case of a supervisor. *Aryain v. Wal-Mart Stores Texas LP*, 435 F.3d 473, 479 n.3 (5th Cir. 2008); *Sharp v. City of Houston*, 164 F.3d 923 (5th Cir. 1999) (holding that a negligence standard governs employer liability for co-worker harassment). *See also Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998). Plaintiff does not specify whether the hostile work environment was created by Phillips or some other co-worker.

To affect a term, condition, or privilege of employment, the harassment "must be sufficiently severe or pervasive to alter the conditions of the [the victim's] employment and create an abusive working environment." *Aryain v. Wal-Mart Stores*, 534 F.3d 473, 479 (5th Cir. 2008) (quoting *Lauderdale v. Tex. Dep't of Criminal Justice*, 512 F.3d 157, 163 (5th Cir. 2007)). The environment must be deemed "both objectively and subjectively offensive, one that a

reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Aryain*, 534 F.3d at 480 (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998)).

Plaintiff has not alleged that any of the harassment she experienced, from Phillips or any other source, was motivated by her age. She therefore has not satisfied the third element required of a prima facie claim. Additionally, Plaintiff admits that she cannot satisfy the fifth element because she did not report Phillips' alleged comment that she was a "dirty spic" to Phillips' superiors or anyone at the Pasadena Field Office. Plaintiff has therefore failed to create a prima facie hostile work environment claim.

### III. CONCLUSION

For these reasons, Defendant's Motion for Summary Judgment is **GRANTED** and Plaintiff's Motion for Summary Judgment is **DENIED**.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the 11th day of September, 2009.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

TO ENSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS
ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY
AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN
SENT ONE BY THE COURT.